Good morning, Your Honor. Robert Bramson for the petitioner. I have a question. You're not Mr. Aarons Walker, right? No, Your Honor. Did you have any association with the original litigation? No. My first entry into this case was to bring this petition. Thank you. The decision below cannot be affirmed unless all of the following points were true. First, that these non-client defendants had standing to assert an alleged conflict to seek disqualification rather than seeking a motion for inadequacy under Rule 23. Second, that substantial evidence demonstrated that the dual representation created an actual, not theoretical, conflict between the classes. Third, that it was irrelevant that the dual representation had ceased before defendants brought their motion, and that Mr. Aarons was solely representing the same clients he had represented since 2001 at the time the Court made its ruling. Can we go back? I'm sorry. I didn't mean to cut you off. You had three points, I think. Well, there's fourth and fifth. Okay. If you don't win on your first three, you're going to have trouble. Let me ask you a question. Is the standard for inadequacy of class counsel under Rule 23g-4 something not mentioned in either brief, yours or the other side's? Is it different than the standard of having a conflict? The standards under Rule 23 are much broader. And that's what I thought. And so let's put aside for a second here whether or not the other side had standing, because that makes me nervous. It makes me nervous that non-clients can attack standing, although there are some cases that say so. If they brought to the judge's attention information that might cast doubt on adequacy of class counsel under 23g-4, why couldn't the judge act on that? And why didn't he, in effect, act on that here? If they were reviewing for abuse of discretion, no possible legal way to do it. Why doesn't that justify what the judge did? Well, we do not contend that the defendants here could not have raised adequacy in presumably in some kind of motion to decertify would be the ordinary procedure for raising it following certification. I'm asking a different question. Wasn't that, in effect, what happened here? No, Your Honor, it was not, because it actually, interestingly, in the Smith case, Judge White did address the issues to some extent within the context of the rules for class certification. And if you go back and it's in the record, you read the motion by the defendants in the Smith case, they presented it 100 percent as an argument for concluding that counsel was not adequate under Rule 23. And in doing so, Judge White looked at, considered what he saw as an issue under the California Rules of Professional Conduct and considering those issues perfectly proper under Rule 23. We don't say to the opposite. Then when it came around to Judge Wehre in this case, Judge Wehre understood the question to be, and it was presented this way by the defendants in their moving papers and their reply papers very strongly, they said explicitly, we are not asking you to find a conflict, we are only asking you to implement Judge White's decision. Well, I don't read the order in this case as the judge buying that. In other words, I read the order in this case as the judge saying I've considered Judge White's opinion, I'm not bound by it, and I make a conclusion. But I'm still not sure you've answered my question, which is that would his conclusion that there was a conflict, which was reached in the previous decision, and I think which is probably accurate, would that conclusion be enough for a judge under Rule 23g4 to say, I know, I've now concluded that these people should not be class counselors anymore? No, because the factors to be considered under Rule 23 include many other things. One principal point, which we mentioned in our reply brief, is the existence of non-conflicted co-counsel. And before the Court's ruling, Mr. Ahrens had already obtained the services on behalf of the clients of a new firm to represent the class at the retrial that was then scheduled. There was no suggestion that that other firm had any prior relationship to the case or any conflict whatsoever. Well, but when you have the simultaneous representation, then it's not – I mean, there is case law to support that. You just can't undo that. Well, there's case law saying the opposite in this kind of procedural circumstance. Well, let's sort of look at – you know, I want to look at this sort of at the gist of what's really going on. I mean, I'm a former trial judge, and so that I'm used to, you know, counsel spinning things the way that they want to spin them, and I'm also used to, I don't want – don't waste my time. And what I see here at some level is there's this pot of money that if you take things out of that pot of money, it hurts the other clients. And so – and I know that counsel in litigation sometimes will – you know, the concern over if defendants can disqualify plaintiff's counsel, then if, say, plaintiff's got a really good lawyer. Well, everyone wants to get rid of a really good lawyer because it makes the litigation easier, but it also interferes with someone's right to have the counsel of their choice. But here you have a situation where it seems to me, since it's the same pot of money and there's an actual conflict – now, the plaintiffs are saying right now, oh, we – there's not – it's just speculative. We don't worry about it or anything. But let's say at the end of the day, you go through the whole thing, and then the plaintiffs really say, oh, my gosh, we were screwed. We – the counsel took all the money out. Then defendants are in a position where they have a judgment. They've litigated the whole thing. It's assailable. The court spent all this time, and the court has to say, you're right. You know, they really did have conflicted counsel. They weren't represented. We've got to set this aside. So why can't a court take that under control and just say, you know what? I'm not going to waste everyone's time. I'm not going to let you do this. It isn't speculative. And you really are fighting over the same pot of money. You should have thought before you did it. And, you know, game over. Well, there's a few – a few answers to those points. Yeah, but that's really kind of what's going on here. Okay. So first of all, there is this fundamental question about whether there really was a meaningful pot of money that was – that was being – A million – it's a million bucks. Well, it could have been – it was either 500,000 or a million or something in between. So that's – I know we deal with government issues from time to time, but that's real money, isn't it? Well, it's not that it's not real money, but given the size of the class and the necessity to give notice if there's to be any distribution of funds, not to mention the cost of distributing, it was impossible. The administrative cost of distributing any money to the class would have used up all the available funds and more. So why even bring in the lawsuit, then, if there's no chance of recovery? Because, well, now you're bringing up an important point that I want to emphasize, Your Honor. The lawsuit in this case below is not against that bankrupt entity which only ended up with these paltry funds, or maybe not paltry, Judge Hurwitz, but insufficient funds. It would be a lot of money for me, but I understand their point. But the lawsuit here is against Mr. Meeling and some related parties. But you're overlooking the basis of the conflict that two district judges found, which is the pot of money. And the problem is the self-cannibalizing provision that that pot of money gets reduced for every hour spent in the Smith litigation. You are burning up money right now that is reducing that pot. Well, I don't know. That's the conflict that we have. You're getting paid by that million bucks. Yeah. Well, I understand you're not getting paid. That money was never going to go to the Smith plaintiffs. So that's sort of a misnomer. But I think we said the conflict is in the same lawyer trying to represent two different classes of clients, and for every hour that he spends representing the Smith clients, he's hurting the Del Campo clients. Well, that's the question, Your Honor. That's the question, Your Honor, that we present in our briefs is, was there a conflict here? Well, and I've got a factual finding by two district courts that say we see an actual conflict here. Well, I — with respect to Your Honor, there was no factual finding, such finding made by Judge Wehr. He specifically said, I'm not going to find that. Judge White found it, and I'm going to implement it. Oh, okay. Specifically, where in the record does it suggest that the district court relied only on the Smith decision in disqualifying counsel, rather than conducting its own independent conflict analysis? Because it seems that Judge Wehr did do some of his own independent analysis. Well, it's at the way you frame the issue, but if you actually look at the order, it appears that he did more. Well, okay, Your Honor. I would direct you to page 2 of the appendix, footnote 7 of — I think it's that same page. This is all his order. Footnote 10, which is on page 4 of the appendix, and the first sentence of section C-2, which is on page 5 of the appendix. And in each of those places, Judge Wehr says specifically, the question here is whether Judge White's order mandates that I disqualify counsel in this case. But that's not the question that I asked you. The question was whether or not there are two different district judges who both looked at the same facts and, in their rulings, found there was an actual conflict. I mean, all I read footnote 7 to say is, I'm not bound to automatically follow Judge White's decision. I have to make my own decision. And at the end of the day, Judge Wehr enters an order of disqualification, which he cannot enter unless he finds there was a conflict. Well, as I understand the way Judge Wehr framed it in his order, he was saying there's an order by Judge White finding disqualification appropriate there because of dual representation. I have another case which is at least tangentially related to that dual representation, and therefore, I find under the California rules of — the California law applicable that I have to automatically disqualify counsel from this case as well. Roberts. Let's come back to the question Judge Callahan asked before. Let's assume Judge Wehr only relied on the previous decision and that he should have done something more. Why isn't there a conflict in this case? That's the underlying question. Whether or not the judge's reasoning was correct or relied on the right things, tell me why, in your view, there wasn't a conflict of interest. Okay. There were some aspects of the Smith case which benefited the former class members in the Del Campo case who are now facing — now making claims in bankruptcy. First and most importantly, the class — these class members were injured, we allege, were injured by improper conduct. And that — those business practices were continuing by the successor entity, and the Smith case was seeking an injunction to stop those practices. The same injunction had been sought in Del Campo, but it became mooted when that company declared bankruptcy. And each of the — I understand why the cases are similar, and I understand why Mr. Aron's skill in one case might carry over to the other, but focus on this — this pot of money, however big or small. Why isn't there a conflict with respect to that? Okay. But each of the class members in their conflict waivers says — No, those are the class reps. They're not each of the class members. Sorry. You're right. The class representatives in their conflict waivers said, my principal interest in being a class representative was to stop this improper conduct. So I was in favor, and I am in favor, of any actions that will stop that conduct going in the future. Okay. So there's a benefit to the class members. Now, what's the detriment, obviously, also, as we looked at? Can we rely on those waivers where we have a finding by Judge Ware that they did not meet the requirements of a valid waiver under California law? They were not obtained prior to the engagement. They don't expressly acknowledge that they were adequately informed. We have no indication whether they sought advice from independent counsel before they executed the waivers. There's nothing in those waivers that — Well, obviously, the waivers are before you, Your Honor. And Judge Ware found them insufficient for two reasons, and we addressed those reasons in our brief. So we don't think there was either substantial evidence or it comported with the law. But if we agree with Judge Ware that those waivers are ineffective, then you lose on that element as well, do you not? Well, it may be, if you affirm Judge Ware on that point, then you would find that if there was a conflict, it wasn't effectively waived, but that doesn't mean that the court can't consider the content of the — I mean, it wasn't that they were stricken as inadmissible. The judge just found, I'm not going to accept that. But one of the problems he found was that they weren't even executed until after the conflict was evident. Well, actually, that's not true, Your Honor. The fact is true, but Judge Ware made no such finding. That was an argument presented — I'm sorry. The fact is true, but I'm — you lost me on that one. I'm sorry. Judge Ware did not express any — any feeling that he should reject the waivers because they hadn't been submitted until the time. Right, but it's an undisputed fact. It is an undisputed — the timing is an undisputed fact. Defendants argued that they shouldn't be accepted for that reason, but that's not what Judge Ware ruled. But anyway, going back to my point, because I do want to judge her words, I do want to address this fundamental question about, is there an injury or a potential injury to the Del Campo class members from the dual representation? And it's our position that there isn't. There's a theoretical point, which is there was this money and it was theoretically available to the class members. But what we are saying is, in a practical sense, it was never available to the class members. It couldn't be distributed to the class members, and the class members would never get it. So if there was — if, at the end of the day, there was some money available, and of course, as it's turned out from the record, there isn't any money, but if there had been some money, it was only enough to pay some costs from the bankrupt — incurred by the counsel in the bankruptcy, possibly pay a small amount of attorney's fees, and possibly do a sci-pre distribution of the rest. But it was never going to go to the class members. So how in the world are the class members hurt by the unavailability of that money? That's the question. I think we have your point. You're over time. Let's hear from the other side. Thank you, Your Honor. Good morning. May it please the Court. Brett Godfrey on behalf of the real parties in interest. I'd like to point out rapidly one key statement that was made repeatedly in the briefs and by counsel, and that is that the million dollars is never going to go to the parties for whom the settlement was intended to go. The money is in the hands of the lawyers that were disqualified. The disqualification in this case was premised upon several public policy factors, as well as some real undeniable facts. The public policy factor that is the most important here is the one that there is a appropriateness of class counsel and their qualification to serve as such. Is that an argument you made to the district court? It is, indeed. And it's not in your briefs, an appeal, is it? Do you make a Rule 23 argument on appeal? Well, no. Let me back up. That isn't a Rule 23 argument per se, but it is the backdrop against which the California State law has to be applied. I understand. I'm just trying to ask you about the record. Did you argue to the district judge that under Rule 23g, they should be disqualified as class counsel? We made two motions for disqualification of counsel. Now, the disqualification of counsel motions in both instances were accompanied by motions for decertification or review of the certification orders. And they were related issues in both rounds of briefing. And to give you the time frame of that, in the fall of 2010, the case had been pending for about 11 years at that stage. I was retained about three months before trial. And three months prior to that, Judge Ware had entered summary judgment against the defense on liability, and there was even some thought that it was a liquidated damages case. Once I was brought in to try the case, the first thing we did is we analyzed this conflict of interest issue, along with other things, in terms of just going to school on the case, and found that there was this inherent conflict. We thought a million dollars was very real.  And the question is, did you file a rule 23G motion? And if so, where is it in the record? I don't know exactly where it is in the record because it isn't part of what was briefed on this appeal. But what we have before us here is this disqualification order, which isn't – which is legally a different animal than the motion that was filed. That's right. So I didn't want to delve down too far into that rabbit hole, but there was a challenge made. It's not up for review at this level. Okay. So let me ask you, as Judge Callahan has suggested early on, that we ought to get to the meat of the case. What concerns me about your position is, don't we open ourselves up to endless litigation in commercial cases where defendants are well represented? Every time we're going to have to – if we review this, don't we have to review every time, or don't we encourage people in every case to challenge the qualifications of the other side's counsel? No, I don't think so, Your Honor. Respectfully, what we do is we reiterate that the court must do that, and we affirm the court's discretion when, in its review of those things, it concludes that those – But when did the conflict occur relative to you coming on the case? Say – When this – when did – when did the dual representation happen? That dual representation conflict was present long before I took on this case. So then why isn't this, like, new lawyer comes on the case on the eve of trial, let's – I've got a new theory of this, let's dump it? I'm sorry. I don't – Well, I mean, you know, these disqualifications coming from defendants of plaintiff's counsel can be used tactically. They can be, but it's not – it's not the case here. And tactically, I'm seeing a similarity that if it was there before, what was other counsel doing? Why wasn't other counsel doing something? You come on the case, and then it's like, aha. Well, I did a lot of things my predecessor didn't do. Well, but it's your client we're concerned about. How long did your client know about this alleged conflict? Because we studied the file. My client – Oh, no, not – not you. You're a great lawyer. You looked in the file, and you – I understand the question. My client was a principal in ACCS, which, by the way, is a defendant to this day. I understand. But didn't your client as a principal know that – know of this alleged conflict for, what, years before you brought the motion? I don't think he did. I have no evidence that he was there. He certainly was of record, wasn't it? He was what? It was of record. Well, my client knew about the million-dollar payment that had been made. And knew that that payment was contingent on the money not being, in effect, dissipated by further litigation about this stuff. I don't think my client understood the legal consequences of that fact, but he certainly knew that the million dollars had been paid over to Mr. Ahrens. But it's still the same question Judge Callahan was asking. Your client went out and got a better lawyer, apparently. And brought up an issue that they could have brought up two years before on the eve of trial to get counsel disqualified. Why should we be encouraging that? Well, I'm not saying that you would encourage that, because that isn't the order that's on appeal today. Because the first time I did that, I was turned down on that. Judge Ware denied that motion, and that motion is not what's on appeal now. Let me see. My colleague's questions have got me thoroughly confused. I thought the conflict arose. Maybe I didn't understand it the first time. So let me ask the question. I thought the conflict arose when the Smith litigation was filed, which would have been raised. When there's concurrent representation of competing interests. Right. That occurred as of the minute that the Smith litigation was commenced. And in the timeline, how — what was the date of that in relation to the motion to disqualify? I don't recall the exact date, but I believe it was shortly before my retention or shortly after my retention. So we're talking a matter of, what, a few weeks or a month? One way or the other. Okay. So it's not two years, as Judge Hurwitz had suggested. No, I don't believe so. But here's the key. The first — when that litigation was first commenced and we became aware of it and understood its effect in creating a conflict, at that time we raised that with Judge Ware in two separate motions. Both were denied. The case subsequently was tried to a jury. We prevailed effectively in the jury trial. The plaintiffs have taken the position that their $12,000 damage award makes them a, quote, unquote, prevailing party. And if $12,000 is enough to make them a prevailing party and they have a million dollars that was paid to the class, which they claim, and this is key because this goes to our standing, they claim that they're never going to give that money to those clients, and that is how they get rid of a conflict? Now, that opens us up. Now you've confused me again. I understand the nature of the conflict. How long after the Smith litigation was filed was the order of disqualification entered in this case? About a year. About a year afterwards. About one year afterwards. And it was only after that order that Judge Ware agreed to reconsider. No, okay. Now, that's where — walk me through the timeline. The Smith litigation is filed on day one. How far after the time the Smith litigation is filed does the — is the disqualification order in the Smith litigation entered? A little less than a year. A little less than a year. And it was soon after that. File your motion. How much after the Smith litigation did you file your motion? The first motion was within three months or so. The second motion was about one year later, after the trial of the Del Campo case. And it was immediately in the aftermath of the Smith disqualification order that we filed our second motion, which essentially sought reconsideration, but asking the Court to take into account a legal argument, which I heard you challenge or not challenge, but at least address with questions to my colleague. And so I'd like to address that, if I may. When we see this order, if we study it in an abstract vacuum, it isn't totally clear whether or not Judge Ware finds the Smith order to be a not necessarily binding decision, but a dispositive event nonetheless. And this is the argument that we made below to Judge Ware, which he essentially accepted, especially in the transcript of the proceedings, was that if you had several referees on a football field and one of them drops a flag, and he shouldn't have it, the fact that he shouldn't have doesn't mean that they don't stop the game momentarily. That's a timeout. Even if the other referees disagree with it, they have to be bound by the fact of it. Now, once we have Judge Ware in a class case in which the defense has already prevailed once at trial, aware of a conflict of interest decision by a fellow judge, even if he's not bound by it precedentially, he is nevertheless bound by the existence of the class case and the evidence of it in terms of his administration of his ongoing independent duty with respect to the ongoing qualification of class counsel. That was the basis. Does the year later, does that further develop whether the conflict is just, as they say, a mere speculative, merely speculative, or if it's a real conflict? Is that evidence of that? Yes, indeed.    And we have to be able to say partially, because point one, in that time, it's fleshed out that these same attorneys have no intention of distributing the money to those clients. Now, if those clients ---- That wasn't what Judge Ware ---- see, the diff ---- some of the difficulty we're having here is that you bring an initial motion to disqualify, and Judge  Right? Indeed. And then it's a year later, about. Roughly. Roughly a year later. Meanwhile, it's ---- Slightly more, but yes. Slightly more than a year later, which is the timeline I thought we were dealing with. Now I'm with you. I'm in the timeline. The timeline I thought we were dealing with here. Okay. Slightly more than a year later, Judge Ware says, well, now they've been disqualified in the Smith litigation, and now I find they should be disqualified. Is that a fair ---- It's precisely correct. Precisely correct. And so the question is, aren't we going to end up ---- why is this additional fact that they were disqualified in the Smith litigation? It's not an issue of fact. It's a ---- No, why ---- matter of law, why is that so important here? It's legally operative because it goes to the appearance of a conflict. Because it's more than just the kind of appearance that's in the case like the Marino v. AutoZone or the flat case or the truck insurance cases. Those cases talk about disqualification is automatic because of the appearance of impropriety and the need to maintain the public's sense of confidence in the justice system and the practice of law. When you have a judge in a sitting federal district judge says this is a conflict, for the other judge to say, well, I'm not bound by that and I'm therefore not going to agree with it or take action as a result of it, might not have been an abuse of discretion for him. But it absolutely wasn't an abuse of discretion for him to go the other direction and say, no, in the face of that, I am acting in my role. And this is a pure abuse of discretion case under State law. Well, and I understand your arguments about the appearance of impropriety and systemic arguments. How does it hurt your clients? I mean, in the real world, isn't your client's real interest here to get rid of a lawyer who's most experienced in the case? To be honest, no. I mean, in the real world, no. I can't think of a more easily defeated foe than that gentleman. That's a truthful answer. But the fact is that having won this case after 11 years of litigation and millions of dollars expended, my client doesn't want the very real risk of having to go back through it again because plaintiff's counsel is facially disqualified by virtue of an order that's not on appeal here. We can't pretend that that Smith order didn't stare Judge Ware in the face. It was there. It's not reversible in these proceedings. And it wasn't an abuse of discretion for him to take action in the face of that. He couldn't reverse it. He couldn't ignore it, or at least chose not to. And choosing not to ignore that, again, it's an abuse of discretion standard. Was it an abuse of discretion for Judge Ware not to ignore? I understand. But, again, specify for me the injury your client would – that gives your client standing to raise this issue. The risk of loss of finality of an expensively obtained result after a dozen years of litigation or more. In other words, your argument is you're afraid you're going to win and have to try it again. Yes. And that's a very, very real risk, especially when you add in their statements on the record about in the context of the erasure of the conflict, they say we just won't give the money to the clients. I mean, that is a compounding effect. That isn't a curative effect. It opens up a better record. And remember, those lawyers are in litigation today for that exact issue. Didn't we deny your request that we take judicial notice of that? Yes, but that doesn't mean that those pieces of the record that discuss that aren't still part of that record. You have that before you. You don't judicially notice it, but it's still in the record and subject of argument part of an appellate body. I guess one reason, at least from my end, that I thought judicial notice wasn't appropriate is people get sued all the time. So we're going to take judicial notice of the fact that somebody makes an allegation? Well, you know, again, I separate judicial notice from every other piece of information in the record. Why is it relevant? Say again. Why is it relevant? Because it underscores the problem that the finality of this judgment is a product of people attacking that lawyer, which is already happening. My client, you asked me the question, how is my client hurt? But did Judge Ware consider that in his analysis? And when we evaluate Judge Ware for abuse of discretion, was that before Judge Ware? It was most certainly before Judge Ware, but in terms of his written order, he did on page 8, as I recall, analyze this from the standing standpoint and said that that was the basis of our standing. Furthermore, in the other lawsuit, but the fact that you might not have finality. Yes. Yes. The other lawsuit was not expressly discussed in the order anywhere. Does this case come out any differently in your mind if there wasn't another lawsuit? No. Okay. It would not. We would have to take into account the potentialities of that as universally done when we look at the standing of counsel as opposed to standing to challenge counsel, the standing of class counsel to serve. We have two meanings of the word standing. Is this an opt-out class? Yes, it is, but I don't know that anyone has done that. If notice were given to the class when class notice were given that Mr. Arons had a potential conflict, would that cure the problem there? It would not, as a practical matter, do that, because you still have the case law, the California State case law, that says concurrent representation of conflicted parties or parties with competing interests is an inherent disqualifier. And, in fact, we cite in our brief case law that says waivers are inapplicable in that context under California State law. Some conflicts cannot be waived, and that's true even outside of the heightened scrutiny of a class case under Rule 23. But when you add that on top of it and then go back to could that be an abuse of discretion, it's a mountainous pile of stuff to support what the Court did there. It's not an abuse of discretion. Could he have arguably gone the other direction and still been sustained? Admittedly true. This is, I reckon, I just have a question, so you can answer this. I reckon, I think that appellants are claiming that because California law is somewhat unresolved on this, that that's a reason that we should weigh in. But whatever we say about California law really only decides this case. It doesn't decide California law. Is that correct? That is absolutely correct, Your Honor. It would be controlling in the circuit, but then the California court would, or it would be something you could certify as an issue. And there was never any real discussion of Judge Ware certifying this case at the time it came up, because we felt that the case law from the California State courts was pretty clearly on point and applicable. And he cited that, you know, the Marino v. Auto Zone and the flat case in his order on those points. All right.  That answers my question. Especially when it comes to the expediency of dropping one, saying that Smith order cured the conflict, the expediency of dropping one client wasn't adequate. Thank you, Mr. Gottfried. Your time is up. And, Mr. Bramson, I'll give you a minute on rebuttal. First of all, on one factual point that does need to be cleared up, no money was ever paid to Mr. Aarons or anybody associated with him. No money has ever been paid. The bankruptcy trustee says no money will ever be paid. So that's a factual matter that has to be clear. Well, some of the – is there a pot of money somewhere in the bankrupt estate? No. For complicated bankruptcy reasons, the defendant, the buyer, advanced some funds, and the buyer contends that the amount they advanced and some various other circumstances in bankruptcy mean that they don't have to pay anything. So were the funds paid over to the trustee in bankruptcy? No. They were – they have not been paid. They weren't due to the extent the buyer had an offset that could be applied to the payment. Oh, I see. It's like an insurance policy that says your lawyer's expenses deplete the amount of the policy. Yeah. I mean, well, I think as I understand it, they were mostly costs advanced to get the bankruptcy plan approved. At any rate, the bankruptcy trustee says we haven't gotten any money and we'll never get any money. Okay. Now, on one legal point, as far as – this goes back to standing. As far as this concept that a class member could claim inadequacy somehow after a final judgment against Mr. Meeling, it's just – it's fantastical, because if there was a conflict, giving all the presumptions in favor of the order below, if there was a conflict, it was between some members of the class who were seeking funds from ACCS in bankruptcy and the Smith plaintiffs, because the Smith plaintiffs were reducing the amount available in bankruptcy to those people. But the defendants here are Mr. Meeling and his related parties, and there is no conceivable contention that there's any evidence or reason to think that Mr. Ahrens would not have diligently and vigorously pursued every penny for Mr. Meeling. It has nothing to do with any possible conflict. So there's just no – there's just no basis for any speculation about possibly challenging after, unless this Court wants to rule that in any class action, the defendant can always bring a motion for disqualification. We think that would be bad policy, and we think the easy answer is to analyze these things under Rule 23, where the Court can consider, for example, how good a job the lawyer's done. And Judge Wehr noted in the record when he's disqualified him, it's not you, you've done a great job. Thank you, Your Honor. Breyer. Your time is up, and I appreciate the vigor with which your argument was delivered. We thank you both for the argument. Thank you to the Court. The case just argued is submitted, and we are adjourned for the day.
judges: Tallman, Callahan, Hurwitz